Parker C. J.
deVvered the opinion of the Court. The question presented by the pleadings in this case, is whether this Court has, by virtue of any of the statutes conferring upon it jurisdiction in equity, authority to entertain the suit, so as to grant the relief prayed for in the bill.
We are very clear that there is no such authority given by the statute of 1817, c. 87 ; which limits the jurisdiction to cases of trusts arising under deeds, wills, or in the settlement of estates. There being no deed or will, the question is con *263 fined tu the last species of trusts mentioned in the statutes, viz. those which arise in the settlement of estates. The definition of this phrase has never been settled, and it is difficult to ascertain the precise meaning of the legislature in the use of it. There must be a trust, and it must arise in the settlement of estates. Trusts created by settlements, according to the technical use of that word in England, could not have peen intended, for they are created by deed or will, and are therefore provided for expressly by statute. We can see no reasonable exposition of the term, unless it was intended to reach those implied trusts which may be charged upon executors or administrators by reason of the duties or neglect of duties, which devolve upon them in consequence of their appointment to and acceptance of such offices; possibly also heirs may be charged with trusts within this description, in virtue of the settlement of estates upon one or more of them by a decree of the judge of probate, where the estate does not admit of an equal division.[1]
The case presented by the bill is not embraced within this exposition, for if any trust exists, it was created by the deceased proprietor of the notes in his lifetime, and it is not such a one as the plaintiff would seek to enforce. Whether when chattels or evidences of debt are put into the hands of a friend by an insolvent person, for the purpose of preserving them for his family, against the rights and interest of his creditors, a trust does not arise to the administrator, who succeeds to all the property of the deceased, and who represents the creditors, is a question which has not arisen with us, though we cannot doubt such would be the decision of a court of chancery in England. If such a trust does arise, it might be well said that it arises in the settlement of an estate, for the administrator must settle the estate, and in order to do it, he must look up and possess himself of the effects and credits of the deceased. We do not therefore decide that our jurisdiction over this case depends entirely upon the statute of 1823, c. 140 ; but believing that the case comes within this statute, we give no decisive opinion as to other sources of jurisdiction.
It must have been considered by the legislature, that the *264 existing provisions of law were defective, when they enactec this last statute. This provides, that in all cases where any goods or chattels, deed, bond, note, bill, specialty, writing or other personal property, of any person or persons, shall be taken or detained from him or them, and secreted or withheld," so that the same cannot be found, or come at, to be replevied, the justices, &c. on application by bill, petition or complaint, may order the same to be delivered up, or compel such discoveries and disclosures, and make such orders, injunctions and decrees, and upon such terms and conditions, as equity shall in such case seem to require.
The bill states that two promissory notes belonging to Porter deceased, were just before his death delivered by him to Peeler, the defendant, upon a trust between them that the notes should be held by Peeler for the support &c. of a child of Porter ; that Porter died insolvent, and that the purpose and effect of the trust were to conceal the property, so that it could not be applied to the payment of his debts. This act was a fraud upon the creditors, and the notes so delivered would be the property of the administrator of Porter, as soon as he should be appointed ; so that the plaintiff, in that capacity, is within the description of persons entitled to a bill under the statute. The only question then is, whether the notes were so situated as to be the proper subject of this statute remedy.
Considering the statute as in a high sense remedial, we are not disposed to give it such a close construction as would be likely to exclude cases within the mischief intended to be redressed. Honest defendants can in no case be injured by this process, for their own statement under oath will protect them, unless satisfactory proof can be brought to contradict them, and according to the rules in chancery, their answer cannot be effectually contradicted by a single witness. Have the notes then been taken or detained by the defendant from the plaintiff ? If his property, they have been detained, for they are admitted to be in the defendant’s possession, and upon demand upon him to deliver them up, they have been refused. Have they been secreted or withheld, so that they cannot be found, or come at, to be replevied ? Upon this point the argument has principally turned. We think the proceedings in the Probate Court, and *265 me answer by the defendant to the interrogatories there put, are competent evidence here, as the answer to a bill in chaneery would be, in a suit at common law. By those answers the defendant refused to produce the notes, claiming them as his own property. They were therefore withheld, and so that they could not be found, within the meaning of the statute. Nor could they be come at to be replevied, for unless exposed, an officer could not take possession of them ; he bad not the power to extort them from the pocket of the defendant, nor could he, by arresting his person, compel him to deliver them up.
We think it not necessary, to lay a foundation for tms process, that a writ of replevin should first be taken out, and that the officer should return on it that he could not obtain possession of the goods or papers ; any more than it should be required to try an action at law and fail in it, in order to show that there was not a plain and adequate remedy at law, before a bill in equity should be sustained. It is enough that it shall appear to the court by the facts stated in the bill, admitted or proved, that the goods or papers sought to be delivered up, were so controlled by the defendant that an attempt to replevy them would probably be fruitless. So with goods or chattels ; if they should be locked up in a cellar or closet, or otherwise concealed, so that an officer with a writ could not find them to replevy, they may be the subject of this process, without any attempt to replevy them. And in this respect there is a similitude between this process under this statute, and the general trustee process, which applies only when the goods and effects are so held that they cannot be come at to be attached. It has been determined in the case of Burlingame v. Bell, that though physically they may be attached, yet if they are held by a fraudulent transfer, the holder may be summoned to answer as a trustee.
We think then, there having been a demand for these notes before the filing of the bill and a refusal to deliver or even to show them, that they being of a nature to be concealed in the pocket of the defendant so that they could not be found, and being invisible so that they could not be replevied, the case is brought clearly within the provisions of the statute.
*266 But it is objected that after the filing of the bill, and after a hearing upon a demurrer, and an order to amend, there was a formal offer to produce the notes to any officer, so that they might be taken on a writ of replevin ; and that as this was done before the demanded bill was filed, the case is clearly taken out. of the statute. We cannot adopt this argument. If a right of action existed at the time of filing the original bill, it was a vested right which would not be defeated by a subsequent act of the defendant. The amendment of the bill is a continuance of the former process, not the institution of a new one. The suit was still pending in court. If the bill had been dismissed and a new one filed and in the interval the notes had been offered, the argument would apply. But in the actual state of things, the offer to give the complainant a right to another action could no more affect his existing right, than a tender in a common law action would defeat the action, if made before an amendment, which had been ordered, had been filed.
We are therefore of opinion, that this plea should be overruled, and that the defendant be held to answer the bill.[1]

 See Campbell v. Sheldon, 13 Pick. 23.

 See Holland v. Cruft, 20 Pick. 28, et seq.